IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| AMY BLOCK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:22-cv-00044 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| SENTARA RMH MEDICAL CENTER ) | United States District Judge |
| d/b/a SENTARA ROCKINGHAM ) | |
| MEMORIAL HOSPITAL, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Amy Block, a registered nurse, brought this action against her former employer, Sentara RMH Medical Center d/b/a Sentara Rockingham Memorial Hospital. (*See* Compl., Dkt. No. 1.) Block alleges claims of sex discrimination, hostile work environment/constructive discharge, failure to promote, and retaliation in violation of Title VII; sex discrimination in violation of the Virginia Human Rights Act; and negligent hiring, supervision, training, and retention in violation of Virginia state law. Sentara filed a partial motion to dismiss, arguing that certain claims are untimely. (Dkt. No. 3.) For the reasons stated below, this motion will granted in part and denied in part.

I. BACKGROUND

**A. Plaintiff's Factual Allegations**[1]

Block is a registered nurse and holds a master's degree in nursing. She began her nursing career in 2000. Block specialized in caring for patients before and after surgery.

In 2005, Sentara hired Block as the RN Unit Coordinator of the Cardiothoracic Surgical

---

[1] The following factual background is taken from the allegations in the complaint, which are assumed to be true for purposes of this motion.

Department. As the RN Unit Coordinator, Block was responsible for the day-to-day workflow of the cardiothoracic operating room, ensuring that operating rooms were properly staffed, stocked, and prepared according to the surgery schedule and that patients were properly cared for pre- and post-surgery. She also assisted with surgeries and patient care. Block reported to the Operating Room Manager, Dian Barb. Manager Barb reported to the surgery department Director, Stan Holland.

In 2015, Sentara hired Dr. Thomas D'Amato as a cardiothoracic surgeon. A few weeks after Dr. D'Amato began working at Sentara, he told Block that a female employee at his previous hospital attempted to file a complaint against him, but it "worked out" because she was fired. Dr. D'Amato warned Block not to repeat anything he said to her and threatened that if she did so, he would instruct the hospital administration to terminate her.

From 2015 through February 2017, Dr. D'Amato made explicit sexual comments to Block and described, almost daily, the sex acts he wanted to perform on her. Dr. D'Amato rubbed and touched Block's breasts and rubbed against her body. He threatened to rape her. He told violent and misogynistic jokes to Block and other female employees, such as "What do you say to a woman with two black eyes? Nothing you haven't already told her twice." Block rejected Dr. D'Amato's advances and made it clear that she did not welcome this treatment, but he did not stop.

In February 2017, Block reported Dr. D'Amato's harassment to Sentara's Human Resources Department, including Human Resource Director Troy Kurtz. During the meeting, Kurtz commented on Block's Armenian daughter-in-law, stating, "Armenian women are hot" and that he "would like to have one of those." Kurtz also stated that Block would "stir up trouble" if she made complaints about sexual harassment in the future. Sentara terminated Dr.

D'Amato in March 2017.

Throughout 2017 and 2018, Director Holland and Manager Barb told Block that she was "dramatic" and a "liability." Holland and Kurtz told Block's coworkers about her complaints against Dr. D'Amato and that Block was responsible for Dr. D'Amato being fired. Block's coworkers also told her that "administration's ears perk up when they hear your name." Block's coworkers stared at her, gave her the "side eye," or avoided her in the hallway and common areas.

In June 2018, Director Holland and Manager Barb told Block she would be a good replacement for the Director position when Holland retired but that they would have to repair her reputation after "the D'Amato thing." They told her she was "too dramatic" and that there were rumors about her. Later that month, Block applied and interviewed for a promotion: a System Wide Applicant Pool (SWAP) nurse position. The SWAP nurse position would also come with a pay raise. Block was offered the position, but when she spoke to Holland and Barb regarding the news, they requested that she wait before accepting. They told her they would try to match her new salary. Instead, they told the SWAP Department she was "too dramatic." The offer was rescinded, and Block received no raise. Holland told Block about what he and Barb had done to prevent her from receiving the promotion and pay raise.

Approximately three months later, in September 2018, Sentara hired a new cardiothoracic surgeon, Dr. Yuri Zhukov. Dr. Zhukov sexually demeaned Block on a daily basis, including telling her things such as "Come over and sit on my lap and see what pops up"; "Do you know what I could do to you?"; and "Why don't you bend over for me?" (*See* Compl. ¶¶ 40, 41 (listing several more examples).)

In December 2018, John Lundgren, a physician assistant, groped and kissed Block

against her will. Lundgren grabbed Block's buttocks and said, "It's not a matter of *if* it's going to happen; it's a matter of *when*." Lundgren called Block "eye candy for the new surgeon." Lundgren texted Block that he "missed her," that he "needed to be touched," that he "loved her," and about "manscaping." Lundgren also texted Block a picture of his penis.

From September 2018 to April 2019, Block complained to Director Holland and Kurtz approximately three to four times per week about Dr. Zhukov's and Lundgren's sexual harassment. During this time, Block also complained to Manager Barb. In October 2018, after Block complained to Manager Barb about the retaliation she had experienced since reporting Dr. D'Amato, Barb asked Block if she was sure she didn't "egg it on." Barb also asked Block if she did anything to encourage the male employees' behavior. In December 2018, Holland and Barb both rolled their eyes when Block reported new allegations of harassment, including Lundgren's groping, kissing, and inappropriate text messages, as well as an incident earlier that month in which Dr. Zhukov threw a scalpel at Block. At one point, Holland told Block that he would need to protect himself against her and that he could not trust her because she had filed complaints of sexual harassment. Sentara's Chief Operating Officer, Rick Haushalter, told Block that he wanted to give her a hug, but "I am afraid of you now."

In February 2019, in response to a question about the status of an unconscious female patient, Dr. Zhukov replied that the patient's brain function was already low because she is a woman. During a meeting on February 13, 2019, in response to staff complaints about long hours and Dr. Zhukov's behavior, Director Holland asked the staff which issue they would rather he address, suggesting that employees could either have reasonable hours or be treated respectfully by doctors. Later that month, Block met with Holland, who again called her dramatic and told her that she "stirs up trouble." In March 2019, Holland excluded Block from

participating in a staff meeting. Holland commented that Block made too many complaints.

Block resigned from her employment with Sentara on April 5, 2019. Block alleges that she lived in fear and was afraid to go to work. She felt that she had no other choice but to resign due to her fear that Dr. Zhukov or Lungren would attempt to harm her physically. Block asserts that Kurtz called her new employer in April 2019 and made false accusations about her. Shortly thereafter, she was diagnosed with post-traumatic stress disorder. Block filed her EEOC charge on December 2, 2019. (Compl. ¶ 7.)

**B. Plaintiff's Claims**

Block brings the following claims: (1) sex discrimination (Title VII); (2) hostile work environment/constructive discharge (Title VII); (3) failure to promote (Title VII); (4) retaliation (Title VII); (5) sex discrimination (Virginia Human Rights Act); and (6) negligent hiring, supervision, training, and retention (Virginia state law). (*See* Compl. ¶¶ 64–193.) Sentara moves to dismiss counts three and four, as well as any other claims of discrete acts of discrimination occurring before February 5, 2019, as untimely. Sentara also moves to dismiss any part of Block's harassment claim based upon alleged conduct that was not the subject of a timely EEOC charge.

II. ANALYSIS

**A. Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above a speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While generally a statute of limitations argument is an affirmative defense that is not properly asserted in a Rule 12(b)(6) motion to dismiss, "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," then the court may address the affirmative defense in that posture. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

**B. Timeliness**

"[A]n employee challenging an employment practice of an employer in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC." *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011) (citing *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002)). Thus, claims involving discriminatory conduct that did not occur within 300 days before filing of the charge are untimely. *See Gill v. TBG Food Acquisition Corp.*, Civil Action No. 7:19CV00479, 2020 WL 3869569, at *4 (W.D. Va. July 9, 2020) (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019)). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and are actionable only if they "'occurred' within the appropriate time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The continuing violation doctrine, by contrast, "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citing *Morgan*, 536 U.S. at 118). The continuing violation doctrine applies to hostile work environment claims. *Tang v. Becerra*, Civil Case No. SAG-21-2739, 2022 WL 4465899, at *5 (D. Md. Sept. 26, 2022) (citing *Holland*, 487 F.3d at 219–20).

Sentara argues that counts three and four of the complaint, as well as any other claims of

discrete acts of discrimination occurring before February 5, 2019—300 days before Block filed her discrimination charge—should be dismissed as untimely. Count three alleges that Sentara violated Title VII by failing to promote Block to the SWAP nurse position in 2018. Count four alleges that Sentara retaliated against Block in violation of Title VII by not promoting her to the SWAP nurse position in 2018. These are discrete acts of discrimination that are time-barred.[2]

Block argues that her failure-to-promote claim did not accrue until Sentara hired someone else for the SWAP nurse position. She explains that she does not know who was hired for the SWAP position or when the hiring decision was made because it was in another department. Thus, she argues, the hiring could have occurred after February 2019, within the 300-day period.

Courts have generally held that a failure-to-promote claim accrues when the plaintiff is informed of the promotion decision. *See, e.g.*, *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) ("We agree with the district court that [defendant's] letter . . . , denying [plaintiff's] promotion to full professor, constituted the discrete act of failure to promote triggering the commencement of the limitation period despite the pendency of her internal appeal with the University."). The case cited by Block in support of her argument, *Spida v. BAE Systems Information Solutions, Inc.*, Civil Action No. 1:16-cv-979, 2016 WL 7234088, at *4 (E.D. Va. Dec. 14, 2016), is not to the contrary. In *Spida*, the court rejected the plaintiff's argument that the claim did not accrue until the date the defendant made the actual decision on who to promote. The court reasoned that the plaintiff "ha[d] not alleged any facts to show that she thought she was being reconsidered for the job after she was told she did not receive it." *Id*.

---

[2] Count four includes several allegations relating to actions that are within the 300-day limitations period. For present purposes, any allegedly discrete, retaliatory acts that occurred before February 5, 2019, in count four are time-barred. Sentara recognizes that Block's allegation of a constructive discharge falls within the 300-day limitations period.

at *5. In this case, Block has alleged that the promotion offer was explicitly rescinded in June 2018. Block did not allege that she was still under consideration for the promotion after that date, and it is not plausible to infer that she still thought or believed herself to be eligible after the offer was withdrawn. Block also cites a Fourth Circuit case which held that a plaintiff's claims accrued on the date other employees were selected for an open position instead of the plaintiff. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 428 n.2 (4th Cir. 2004). *Williams* is similarly distinguishable because, unlike Block, the plaintiff in *Williams* was not informed about the hiring decision, making the date of selection the proper accrual date.

Regarding Block's claim(s) that she was harassed and/or subjected to a hostile work environment on account of her gender,[3] Sentara argues that any alleged conduct that was not the subject of a timely EEOC charge is not actionable and that the continuing violation doctrine does not apply. Put another way, Sentara argues that any alleged harassment occurring before February 5, 2019, is not part of the same pattern of ongoing harassment alleged to have occurred after February 5, 2019.

Block argues that her supervisors, as well as the Human Resource Director, Mr. Kurtz, constantly harassed her as part of a single, ongoing pattern of discrimination. She alleges that, prior to February 2019, she was sexually harassed by multiple male Sentara employees and that she reported the conduct to Sentara management. Despite this, both Block's supervisors and Kurtz continued to mock her, called her a dramatic liar, spread rumors about her, denied her a promotion, and criticized her. After February 2019, the same or similar type of behavior continued—with some of the same employees involved, such as Kurtz and Director Holland.

---

[3] Count one of the complaint is labeled "sex discrimination", and count two is labeled "hostile work environment/constructive discharge." The allegations in each count are similar, if not identical. Sentara does not specify which count(s) or claim(s) it is seeking to dismiss; it only argues that allegations not within the 300-day statute of limitations are time-barred.

8

For example, in February 2019, Holland called Block "dramatic" and told her that she "stirs up trouble." (Compl. ¶ 57.) In March 2019, Holland commented that Block made too many complaints. (*Id.* ¶ 58.) And in April 2019, after Block was constructively discharged, Kurtz called Block's new employer to make false allegations against her. (*See* Compl. ¶¶ 57, 58, 62.) Block cites *Edwards*, a case in which the plaintiff alleged nine acts of sexual harassment which began between 2003 and 2006 and continued until 2008. *See* 760 F. Supp. 2d at 623. The court recognized the findings of some other courts "that an eight year gap, a three year gap, and a two year gap in harassing behavior could not form the basis of a continuing violation. However, those cases were all decided on summary judgment, where the court had the benefit of evidence to color the allegations." *Id.* at 624. Moreover, the court found that if some of the same individuals were involved in harassing and retaliatory conduct during and before the 300-day window, the plaintiff could proceed on a continuing hostile work environment theory. *Id.*

In reply, Sentara notes several cases in which claims were dismissed as untimely at the Rule 12(b)(6) stage based on the inapplicability of the continuing violation doctrine. *See, e.g.*, *Burke v. CHS Middle East, LLC*, No. 1:18-cv-01605, 2019 WL 459022, at *5 (E.D. Va. Feb. 4, 2019). Beyond the procedural argument, Sentara argues that the continuing violation doctrine does not apply because Block's allegations regarding Dr. D'Amato, which occurred well before the 300-day limitation period, are separate from the allegations against Dr. Zhukov and Lundgren. Eighteen months passed between Dr. D'Amato's termination and Dr. Zhukov's hiring. Also, the allegations pertaining to Dr. D'Amato involve forcible touching, threats of rape, and violent misogynistic jokes. Sentara argues that this type of activity is unrelated to more mundane claims by other alleged wrongdoers, such as complaints that Block complained too much and was too dramatic. Sentara cites *Davenport v. Maryland*, in which the court dismissed

9

untimely claims on a Rule 12(b)(6) motion where the plaintiff alleged being subjected to sexual harassment by several male managers over the course of many years. 38 F. Supp. 3d 679 (D. Md. 2014). The plaintiff asserted that she was "sexually assaulted by [one manager] within the limitations period, and generally alleges she was subjected to inappropriate sexual suggestions and comments from [two different managers] several times a week, often two to three times per day, throughout her employment." *Id.* at 687 (internal quotations and alterations omitted). The court held that the continuing violation doctrine did not save the plaintiff's untimely allegations because "although the [untimely] allegations of sexual harassment occurred relatively frequently and are related to [the individual manager's] sexual assault, they were not perpetrated by the same managers." *Id.*

On the one hand, the court agrees with Sentara that Block's timely allegations cannot salvage the claims of harassment by Dr. D'Amato—who was fired in March 2017, well before the applicable 300-day limitations period. Indeed, the focus of Sentara's argument is the conduct of Dr. D'Amato and, in that respect, Sentara's motion is well taken. On the other hand, some of the pre-February 2019 allegations do bear some relation to Block's timely harassment allegations. For example, Block alleged that Dr. Zhukov sexually harassed her both before and after February 2019. Similarly, the dismissive behavior of individuals such as Holland and Kurtz allegedly occurred both before and after February 2019. Accordingly, the court will grant Sentara's motion to dismiss as untimely claims based upon harassment allegations pertaining to Dr. D'Amato. The court will deny the motion with respect to claims based upon any other harassment allegations.

### C. Leave to Amend

Block requests leave to amend in the event that the court granted Sentara's motion to

10

dismiss. The court will deny leave to amend as futile because the motion to dismiss is being granted as to untimely claims. *See, e.g.*, *Spearman v. City of Annapolis*, Civil Action No. ADC-21-1779, 2022 WL 1720154, at *4 (D. Md. May 27, 2022) (denying leave to amend because "Plaintiff's claims rely exclusively on allegations that are time-barred" and leave to amend "will not make the allegations in the Amended Complaint timely").

## III.  CONCLUSION

For the reasons stated herein, the court will issue an appropriate order granting in part and denying in part Sentara's motion to dismiss and denying Block leave to file an amended complaint.

Entered: June 15, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

11